VALLEY FALLS COMPANY v. SIMON DOLAN.

A right of way of necessity, is founded on an implied grant, and created by the necessity of its existence to the enjoyment of the estate granted. Convenience alone is not sufficient to raise the implication of a right of way.

Partition of an estate was made by commissioners, and certain lots were set off to the grantors of the plaintiff and defendant respectively. The right to cross the lot set off to the plaintiff's grantor, was given to the defendant's grantor, by said commissioners, for certain specified purposes. The defendant subsequently built a barn on the rear of his lot. *Held*, that he had no right to cross the plaintiff's lot for the purpose of going to this barn, or for any other purposes than those for which the right of crossing the lot was expressly conferred and granted in the report of said commissioners.

ACTION of trespass, the plaintiff corporation alleging that the defendant on the 30th day of April, 1868, broke and entered the plaintiff's close in Smithfield, and threw down and destroyed part of the fence enclosing the lot, and committed other tres-passes thereon.

The plea was the general issue, with liberty to the defendant to offer in evidence under that plea, any thing which could be offered under a special plea in bar.

At the trial at the October term, 1869, of the Supreme Court for this county, before the Chief Justice and a jury, it appeared that the plaintiff and defendant owned two lots of land in Smith-field adjoining each other, and that they derived title to their re-respective lots from one common owner, viz. Joseph Jenks. It appeared that Jenks at the time of his decease, owned among other property, certain real estate called his mansion house estate, on which was a dwelling house and other buildings.

It appeared that after the decease of Jenks a committee was appointed by the court of probate of Smithfield, to make a par-tition of his estate among his heirs ; that said committee made a report with accompanying plat, in 1847. Under this petition the mansion house lot was divided into three parts. Edwin A. Jenks, one of the heirs, drew lot No. 2 in the partition. This is the lot immediately north of the defendant's lot, and is the lot

on which the trespass was alleged to be committed, said lot now being owned by the plaintiff corporation. It is described as the north third part of the mansion house lot, and as containing 13 6-10 rods. The report proceeds as follows : " Also said Edwin A. Jenks shall have the north part of the mansion house in the first story being three rooms and closet; also a room in the garret at the northwest corner ; also the north part of the cellar. And a privilege to pass in and out at the outside doors at all times unmolested. And also the said Edwin A Jenks, his heirs and assigns, shall have the privilege to cross the other lots to the well and of the waters thereof, and to the wood-house and one undivided third part of the same."

The lot immediately south of the above lot was drawn by Sarah Jenks, and is now owned by the defendant, and was owned by him at the time of the supposed trespass. The report proceeds as follows : " The second lot marked No. 4 on the plat, situate and being the middle lot where the mansion house stands and contains 13 6-10 rods." After running the boundaries, the report says : " together with the second story of said mansion house; also shall have the privilege to pass up and down the front and back stairs in and out at the outside doors at all times hereafter at pleasure ; also shall have a privilege to the well and of the waters thereof ; also one third part of the cellar, being the middle part of the same ; and shall have the privilege to pass up and down the cellar stairs outside way and in ; also shall have the one undivided third part of the wood-house, and a privilege to pass across other lots, Nos. 2 and 5, to and from said wood-house ; and also shall have a privilege to cross lot No. 5 to Chase driftway at all times hereafter unmolested."

Lot No. 5, being the south part of the mansion house lot, was drawn by Abby W. Bullock, and certain rights in the mansion were assigned her by the report.

The plaintiffs claimed at the trial that the defendant had built a barn in the rear of his lot (in said middle lot,) and had passed over their lot in going to and from said barn to the street or highway in front of said lots, and they claimed that although the defendant had a right to pass over said lot for the purpose of

going to and from said wood-house, the defendant had no right whatever to pass over said lot for the purpose of going to and from said barn.

The defendant admitted that he had built the barn, and had passed over the plaintiff's lot in going to and from the said barn, and claimed that he had the right so to do.

It further appeared at the trial, that the mansion house cov-ered the entire front of the middle lot (the defendant's) so that no one could pass from the rear of said lot to the street in front, without passing over one or the other of the said adjoining lots.

It also appeared that there was and for a long time had been, a fence maintained on the south line of defendant's lot for the whole length thereof.

It also appeared that from the time of the probate partition aforesaid, the owners of defendant's lot had passed over the plaintiff's close to and from the street for the purpose of using said wood house, and that the defendant had no other way of passing to and from his said barn to said street, excepting across plaintiff's close and except across said No. 5.

It further appeared that the plaintiffs had succeeded to all the rights of Edwin A. Jenks in said lot drawn to him as aforesaid, and that they had become the owners of the lot assigned to Abby W. Bullock as aforesaid, and had succeeded to all her rights in said premises.

It appeared that the defendant had succeeded to all the rights of Sarah Jenks in and to said lot drawn to her as aforesaid.

The defendant claimed that he had the right under the report plat and circumstances as aforesaid, to cross the said close of the plaintiffs to and from his said barn, and this right he claimed as an easement or right of way by necessity arising by implication in the premises. But the judge ruled that all the rights and easements which belonged to the close of the defendant, were those which were created by the express words and terms of the report and plat; and that the said defendant would have no right to cross the said close of the plaintiff for the purpose aforesaid, (viz., passing to and from said barn,) unless the report and plat expressly conferred or granted such right.

To this ruling of the court the defendant excepted. The jury under the above ruling of the court returned a verdict for the plaintiffs for nominal damages.

The following is a copy of so much of the plat made by the aforesaid commissioners as is essential to be considered in the present case:—

SOUTH.

| | |
|---|---|
| Lot No. 5.　A. W. Bullock. | |
| Lot No. 4.　E. A. Jenks. | |
| Lot No. 3.　E. S. Dunwell. | |
| Lot No. 2.　E. A. Jenks. | |
| Lot No. 1.　C. A. Bullock. | |

EAST.            WEST.

NORTH.

*T. C. Greene & P. E. Tillinghast, for defendant,* in support of the exceptions, cited Washburn on Easements, 57, 61; Washburn on Real Property, Vol. 2, p. 38; *Appleton* v. *Fullerton,* 1 Gray, 186; *Underwood* v. *Carney et al.,* 1 Cush. 285; *Dixon* v. *Clow,* 24 Wend. 188; *Brakely* v. *Sharp,* 2 Stockt. 206.

*B. F. Thurston & Ripley, for plaintiffs, contra.*

BRAYTON, C. J. The plaintiffs and defendant are owners of real estate, lots of land adjoining each other, the defendants' lot lying between the lots of the plaintiff. These lots are all parcels of the homestead estate of one Joseph Jenckes, late of Smithfield, deceased.

In the partition of the estate of said deceased, among his heirs at law, made by order of the court of probate, the homestead, which was bounded on the west by a public way, was divided into three lots, No. 2, No. 4, and No. 5. The north lot, No. 2, was assigned to Edwin A. Jenks, under whom the plaintiffs hold. The south lot No. 5, was assigned to Abby W. Bullock, another heir at law, under whom the plaintiffs also hold, and the lot No. 4 was assigned to Sarah Jenks, under whom the defendant now holds. The dwelling house covers the whole front of the defendant's lot, No. 4, and extends northerly upon part of lot No. 5, and southerly upon part of lot No. 2.

The dwelling house was divided among the shares, thus : one half of the lower story next to and partly upon lot No. 5, was assigned to lot No. 5, the other part of the lower story next to and partly upon lot No. 2, was assigned to No. 2, the whole of the upper story to be and remain to No. 4, one third, the middle third, of the cellar, to No. 4 also.

To lot No. 4 was given, by said report, the right to pass up and down the front and back stairs, through the lower story, to the street, and to the land in the rear and to the cellar; a right to pass to and from the wood house situate partly on lot No. 4 and partly on lot No. 2, across both the lot No. 2 and lot No. 5, and the right of way across lot No. 5 to the " Chase driftway." These shares, with the ways appurtenant, and the ways charged upon them respectively, were valued at $1,000 each.

The partition was made Feb. 27, 1847, established May, 1847, and the parties entered into the occupation of their respective shares with the appurtenances, and have ever since until this controversy, used only the ways annexed to their respective shares by the commissioners of partition,—the owner of lot No. 4 using the way across No. 2 only to pass to and from the wood-house, as provided in said report.

The defendant occupying No, 4, now claims that he has, above the right thus expressly granted, the further right to pass across the lot No. 2, from any portion of his lot No. 4, and for any purpose he may choose, but particularly to pass to and from a barn newly erected on his lot, and that, because there is no other access to it for any proper purpose of a barn. He claims this as a way of necessity ; and, therefore, because notwithstand- ing express grants of other ways by the partition, it is impliedly granted by the implication arising from that necessity.

The easement here claimed is one of a class called easements of necessity, because they grow out of the necessity to have the easement, in order to any beneficial enjoyment of it.

But in all cases where a way of this kind exists, it is by grant, and though it is not given by any express terms, or even men- tioned in the instrument of conveyance of the estate, it is im- plied from the necessity of its existence to any enjoyment of the estate granted. The grant therefore depends upon the necessity, and ceases with it.

" The grant of a thing," it is said, " passes everything included therein, without which the thing granted cannot be had."

" If I have a field enclosed by my own land on all sides, and I aliene this field to another, he shall have a way to this close over my land, as incident to the grant, *for otherwise,* he cannot have any benefit by the grant." Roll. Ab. W. Land, 3232 ; Gale & W. on Easements. And it was held " that the way of necessity ceased as soon as the party had any other means of ac- cess to the close to which it led." *Holmes* v. *Goring,* 2 Bing. 76 ; S. C. 9 Moore, 166 ; in which case Best, C. J., said, " A way of necessity will be found to be nothing else than a way by grant ; but a grant of no more than the circumstances which raise the implication of necessity require should pass. A grant, therefore, arising out of the implication of necessity, cannot be carried further than the necessity of the act requires, and the principle consists with all the cases which have been decided."

" From all of them it is clear," said Park J., that " it is a good answer" to such a claim, " that there is another way which the party may use."

All this supposes that there is no other way than the one claimed. The after acquisition of another in any way, defeats it, if the grantee have another at the time of the grant.

The necessity must be actual *necessity*. Mere inconvenience is not sufficient; but the inconvenience must be so great as to amount to a necessity. *Lawler* v. *Rives,* 2 McLean, 445. In *Nichols* v. *Constance,* 24 Pick. 192, the court say, " It is only the necessity that causes the way." " Great inconvenience is not sufficient."

These cases suppose that no express grant is made of any way, but a simple conveyance of the land ; and the defendant's case would have fallen within them, but that no provision for any ways has been made by the commissioners in the partition of this estate.

The fact that the estate held by the defendant has been enjoyed by him, and others under whom he holds, for a period of twenty years, since this partition, shows clearly enough that no other way was *necessary* to the enjoyment of the estate during that period, and that there was no such inconvenience as approached a necessity.

The commissioners did not leave the extent of the easements here, however, to construction, but provide for and define those which should be appurtenant to the respective shares, and which shares should be servient, and to what extent. This was necessary, as well to prevent any dispute in relation to their respective privileges and burdens, as to ascertain definitely the value of each share to make them equal, which could not be settled without considering those privileges and burdens.

With the easements annexed, each share is valued at $1000, and with the burdens annexed they are valued at $1,000. The commissioners had in contemplation for this purpose the extent of each, and its effect upon the value of the land ; and under it the appraisal was made so to extend the privilege for the benefit of the defendant as to *increase the value of his estate, and depreciate the value of the plaintiff's share, and render the division unequal, and so unjust.

We think it quite sufficient that it was in contemplation in

Valley Falls Company *v.* Dolan.

the division to define the easements, and that they were defined by the commissioners who made the partition, and that the estate can be enjoyed and occupied with them, however inconveniently. The provision expressly made leaves nothing to implication, either from necessity or convenience.

Still less can the grantee create a necessity by any act of his, either by destroying a way granted, and rendering another necessary, or by adapting the estate to uses not contemplated, and requiring privileges beyond such as are granted, and were in contemplation as the only ones.

*New trial denied.*